```
              UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

THOMAS CARL PETERSON,          :
                               :CIVIL ACTION NO. 3:18-CV-519
         Plaintiff,            :
                               :(JUDGE CONABOY)
         v.                    :
                               :
NANCY A. BERRYHILL,            :
Acting Commissioner of         :
Social Security,               :
                               :
         Defendant.            :
_____

## MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Acting Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). (Doc. 1.) Plaintiff protectively filed his application on June 1, 2015, alleging disability beginning on April 28, 2015. (R. 15.) After Plaintiff appealed the initial June 20, 2015, denial of the claim, a hearing was held by Administrative Law Judge ("ALJ") Mike Oleyar on March 21, 2017. (*Id.*) ALJ Oleyar issued his Decision on July 21, 2017, concluding Plaintiff had not been under a disability as defined in the Social Security Act ("Act") from April 28, 2015, through the date of the decision. (R. 25.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on January 17, 2018. (R. 1-6.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on March 5, 2018. (Doc. 1.) He asserts in his supporting brief that the Acting Commissioner's

determination should be reversed or remanded because the ALJ failed to consider fibromyalgia a severe impairment at step two. (Doc. 10 at 3.) For the reasons discussed below, the Court concludes Plaintiff's appeal is properly denied.

## I. Background

Plaintiff was born on May 20, 1959, and was fifty-five years old on the alleged disability onset date. (R. 24.) Plaintiff has a high school education and has past relevant work as a mechanic. (*Id.*) In the July 30, 2015, Disability Report, Plaintiff alleged his ability to work was limited by high blood pressure, high cholesterol, migraines, diverticulitis, and colon removal. (R. 137.)

### A.  *MEDICAL EVIDENCE*

Because Plaintiff's appeal raises the issue of the ALJ's findings regarding fibromyalgia (Doc. 10 at 3), the Court will focus on medical evidence concerning the condition and the ALJ's consideration of it.

On January 10, 2017, Plaintiff saw primary care provider Christine M. Sheridan, D.O., with complaints of "total body pain for 15 years." (R. 263.) Plaintiff's physical exam showed no problems and Dr. Sheridan diagnosed chronic pain syndrome. (R. 268.) Dr. Sheridan wondered if Plaintiff's symptoms could be due to his cancer history and considered whether additional work up should be done. (*Id.*)

2

Plaintiff returned to see Dr. Sheridan on January 23, 2017, for follow up after an emergency room visit to Harrisburg Hospital on January 13, 2017, where he had gone for headaches which had been getting worse. (R. 247.) Physical exam showed that his cervical spine was diffusely tender bilaterally but he had normal cervical range of motion. (R. 251.) Dr. Sheridan diagnosed chronic intractable headache and planned to get a brain MRI. (*Id.*)

At a March 9, 2017, visit to the Milton S. Hershey Medical Center where Dr. Sheridan had referred Plaintiff for evaluation of his neck pain, Plaintiff complained of neck pain that went down to both shoulders but did not radiate down his arms. (R. 307.) Plaintiff reported that he had the pain for "many years" and he had not tried physical therapy, TENS unit, or complementary medicine. (*Id.*) He said he had started Gabapentin which did not help him. (*Id.*) Physical exam showed that Plaintiff was very tender to palpation with multiple trigger points along bilateral cervical paraspinals, suboccipital muscles, trapezius, rhomboids, and periscapular region. (R. 308.) Yakov Vorobeychik, M.D., and Sheng Liang, D.O., diagnosed myofacsial pain syndrome of the neck for which a TENS unit and continued use of Tylenol were directed. (*Id.*) Trigger point injections were also planned. (*Id.*)

Plaintiff was again seen at the Milton S. Hershey Medical Center on March 27, 2017. (R. 378.) Vitaly Gordon, M.D., recorded the following assessment: "Mr. Thomas Peterson is a 57-year-old

3

male with chronic pain that is diffuse and very hard for him to explain with a wide range of symptoms that seem to alternate and are not consistent with any pathology." (*Id.*)  Dr. Gordin noted the planned trigger point injections would be cancelled because Plaintiff would likely not benefit from them since he had pain throughout his body. (*Id.*)  He also noted Plaintiff was advised that no treatments could be offered at that time but he should return if his condition deteriorated. (*Id.*)

On referral of Dr. Sheridan, Plaintiff saw rheumatologist Joseph L. Enama, M.D., on April 7, 2017, for reported "chronic pain, muscle and joints with fatigue for years." (R. 343.) Plaintiff complained of pain "all over" which he had for several years but he felt the pain was getting worse. (*Id.*)  Dr. Enama noted that Plaintiff reported his pain to be at the 10/10 level, but "despite claiming to have 10/10 pain, [he] is sitting quite comfortably . . . in no acute distress." (R. 344.) Musculoskeletal examination showed 12 of 18 myofascial tender points were positive to direct palpation and stiffness in his hips on active and passive maneuvering. (*Id.*)  Dr. Enama found that Plaintiff had "a clear fibromyalgia diagnosis on the basis of his positive soft tissue tender point examintion. . . . I do believe that the majority of the pain he is experiencing is related to a fibromyalgia diagnosis as well as perhaps some degree of osteoarthritis in different areas as well." (*Id.*) Adding that his

4

practice did not follow fibromyalgia on a longitudinal basis, Dr. Enama recommended adjusting Plaintiff's medication regimen and consideration of physical and/or water therapy.[1]  (R. 345.)

## B.  *ALJ DECISION*

In his July 21, 2017, Decision, ALJ Oleyar found Plaintiff had the following severe impairments: hypertension; headaches; history of tongue cancer status-post lymph node resection and radiation; history of diverticulitis status-post resection and colectomy; and left upper extremity paresthesia.  (R. 17.)  The ALJ also discussed allegations of memory problems which he concluded did not constitute any medically determinable impairment.  (R. 18.)

ALJ Oleyar concluded Plaintiff had the residual functional capacity ("RFC") to perform medium work

> except he is limited to lifting and carrying 50 lbs. occasionally and 25 lbs. frequently; standing or walking 6 hours in an 8-hour work day; sitting 6 hours in an 8-hour workday; frequently balancing, stopping [sic], kneeling, crouching, crawling, and climbing of ramps and stairs; occasionally climbing ladders, ropes, or scaffolds; and frequently reaching, handling, fingering, and feeling with the bilateral upper extremities.

(R. 19.)

Regarding fibromyalgia, ALJ Oleyar stated that Plaintiff was seen "by a rheumatologist in April of 2017, who indicated based off of one examination that the claimant's pain may be caused by

---

[1]  The record contains no indication that Plaintiff followed up as suggested.

5

fibromyalgia, however, there is no indiction in the record that the claimant has received any further work up or treatment to substantiate such a diagnosis." (R. 22 (citing Exhibit 7F [R. 342-52]).)

ALJ Oleyar concluded Plaintiff could not perform his past relevant work but jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 24.) Therefore, he determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 28, 2015, through the date of the decision. (R. 25.)

## **II. Disability Determination Process**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for the

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step

five of the sequential evaluation process when the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. (R. 24.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for

8

> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the

9

court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## **IV. Discussion**

As set out above, Plaintiff asserts the Acting Commissioner's determination should be reversed or remanded because the ALJ did not properly consider fibromyalgia at step two of the evaluation process. (Doc. 10 at 3.) Defendant responds that the ALJ properly evaluated Plaintiff's fibromyalgia, the step-two error fails because the ALJ went beyond step two in the sequential evaluation process, and Plaintiff has not shown how the outcome of the case would be different had his fibromyalgia been found severe. (Doc.

11 at 16-21.) The Court concludes Plaintiff has not satisfied his burden of showing that reversal or remand is required based on the error alleged.

ALJ Oleyar acknowledged that Plaintiff alleged he experienced symptoms including fatigue, widespread muscle and joint pain, and numbness and tingling in his hands. (R. 19.) The ALJ credited some of these symptoms and provided for related limitations in his RFC. (*See* R. 19-24.) The ALJ also acknowledged Plaintiff's April 2017 fibromyalgia diagnosis. (R. 22.) However, he noted there was no indication in the record that Plaintiff had received further workup or treatment to substantiate the diagnosis. (R. 22.)

Plaintiff does not directly refute the ALJ's findings regarding fibromyalgia follow up but says they are "a misrepresentation of the rheumatologist's exam and the ALJ is imposing his own lay opinion over that of a medical specialist." (Doc. 10 at 4.)

In her responding brief, Defendant cites *Salles v. Comm'r of Social Security*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (not precedential), for the proposition that any step two error would be harmless because the ALJ went beyond step two. (Doc. 11 at 21.) Defendant cites *Shineski v. Sanders*, 556 U.S. 396 (2009), in support of her argument that Plaintiff's claimed step-two error fails because he has not shown how the outcome of the case would be different had his fibromyalgia been found severe despite his affirmative burden to do so. (Doc. 11 at 21.)

11

Plaintiff did not file a reply brief and, therefore, did not refute Defendant's arguments that the fact that the ALJ went beyond step two rendered the claimed error harmless and Plaintiff did not show how the outcome of the case would have been different if fibromyalgia had been deemed severe.

Plaintiff identified a single office-visit diagnosis with no corroboration or follow-up from the primary care doctor or from a physician in the field of neurology which Dr. Enama identified as the relevant field of specialization for fibromyalgia ("a neurologically based condition" (R. 344)). (Doc. 10 at 3-7.) Plaintiff must show not only that he has been diagnosed with a condition but, to demonstrate harm, he must show that it "caused functional limitations that precluded him from engaging in any substantial gainful activity." *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006) (not precedential). Notably, at the four doctor visits in the three-months preceding Dr. Enama's exam and diagnosis, fibromyalgis was not diagnosed or discussed. *See supra* pp. 2-4. With the lack of recommended follow-up/suggested treatment and void of longitudinal evidence related to fibromyalgia, the Court cannot conclude that Plaintiff has shown that the claimed error is cause for reversal or remand.

## **V. Conclusion**

Because Plaintiff has failed to show that the claimed error is cause for reversal, his appeal of the Acting Commissioner's denial of benefits (Doc. 1) is properly denied. An appropriate Order is

12

filed simultaneously with this Memorandum.

                                        <u>S/Richard P. Conaboy</u>
                                        RICHARD P. CONABOY
                                        United States District Judge

DATED: October 9, 2018